Filed 9/11/14  P. v. Miesegaes CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>VADIM STANLEY MIESEGAES,<br><br>        Defendant and Appellant. | A140971<br><br>(San Francisco City & County<br>Super. Ct. No. SCN179153) |

Defendant Vadim Miesegaes appeals from an order denying his petition for conditional release into the community for supervised outpatient treatment pursuant to Penal Code section 1026.2.[1]  Appointed counsel has filed a brief indicating he has reviewed the record and found "no arguable issues to be pursued on appeal." (*Conservatorship of Ben C.* (2007) 40 Cal.4th 529, 544.)  The brief provides a narrative of the facts relevant to the pertinent legal issues.  Counsel provided defendant with a copy of this brief and informed him of the right to file a supplemental brief.  Defendant has done so.  Having reviewed the record, we affirm the order of the trial court.

### DISCUSSION

We recite only the facts pertinent to the order on appeal.  In September 2002, following a bench trial, the trial court found defendant not guilty of  murder by reason of insanity.  (§ 1026.)  In November, the court ordered defendant committed to the state hospital for a maximum term of 25 years to life (§ 1026.5, subd. (a)).

---

[1] All further references are to the Penal Code unless otherwise indicated.

1

Defendant is a resident alien subject to deportation based on his criminal history, and is subject to an "ICE"[2] hold. In May 2013, defense counsel made efforts to have defendant returned to his native country, Switzerland. The trial court ordered Atascadero State Hospital to prepare a recommendation for defendant's readiness for outpatient treatment in the community.

Dr. Henry Hans Bjorn Ahlstrom and defendant testified at a contested hearing on October 23, 2013. Dr. Ahlstrom is a clinical psychologist and a member of defendant's treatment team. He used eight psychological tests to prepare an assessment of defendant. He concluded defendant does not have an ongoing psychotic disorder, but is suffering from posttraumatic stress disorder, attention deficit disorder, amphetamine induced psychotic disorder in full sustained remission, amphetamine dependence, opiate dependence, alcohol abuse, cannabis abuse, hallucinogen abuse, and personality disorder not otherwise specified with antisocial and obsessive compulsive traits (an Axis II diagnosis). Dr. Ahlstrom disagreed with a diagnosis of antisocial personality disorder by Dr. Dean, believing defendant's behaviors are the result of years of drug abuse. (Dr. Ahlstrom also disagreed with other diagnoses of psychoses made over the years by providers.[3]) In his opinion, defendant has a lesser personality disorder, but acknowledged it includes antisocial traits and he does not work well with people. His antisocial conduct is not readily redirectable, and his manner with staff is irritating, although in one on one interactions (which rarely occur given patient and staffing numbers), defendant can understand the other person's point of view.

The prior year, during 2012, defendant "had a really tough time," and different providers "saw different things." Dr. Ahlstrom saw him "as being agitated"; defendant's psychiatrist had a "PRN of Haldol for agitation/paranoia," which ultimately was not administered. In fact, in recent years, defendant has had very little medication administered.

---

[2] United States Immigration and Customs Enforcement.

[3] The reports by these providers were not before the trial court at the hearing.

Defendant's security level was a two or three, allowing him some flexibility of movement about and from the unit. Individuals "get[ting] closer to discharge" have higher numbers. Dr. Ahlstrom also acknowledged defendant had not been assault free in the prior three to four years, and had been involved in three incidents of physical violence, one of which was apparently in self-defense.

Dr. Ahlstrom did not make, nor was it his role to make, an evaluation as to defendant's readiness (§ 1026) to leave the hospital. As for defendant's treatment team, Dr. Ahlstrom's view was that they were not yet all "on the same page" as to the appropriate behavioral guidelines for defendant.

Defendant also testified. He believes his drug abuse is the source of all his difficulties. He started taking prescribed drugs at the age of 12, and at the time of the murder was using marijuana and methamphetamine, and had tried gamma hydroxybutyrate. His first psychiatric hospitalization was at the age of 14, in Switzerland. He was hospitalized approximately a year later for suicidal thoughts. The following year he was hospitalized after having stabbed a drug dealer. He was also placed in a youth camp, escaped, and then assaulted his cellmate upon being housed in an adult prison. At age 21, he was again hospitalized for delusional thoughts and again prescribed antipsychotic medications. He denied telling doctors in 2009 that he believed a transistor had been planted in his spine during surgery in 2004 and the FBI and NSA were tracking him, and asserted the doctors lied in their reports to defame him. He also said he had filed a document in the San Luis Obispo court to "correct" the doctors' reports. He also denied saying during a 2008 CONRAP interview that he was working on a system to improve telecommunication security at the hospital using information he obtained by hacking into the NSA computer system. He also denied saying during a 2012 CONRAP interview that the 2008 statements "sounded delusional."

The trial court denied defendant's request to be placed at a lower level of care, observing he had "come further along" than the court expected, but was still a year or two away from outpatient placement. In the court's view, defendant had not proved by a preponderance of the evidence that he could be safely treated in the community, noting

3

the Conditional Release Program had concluded it was not ready to accept him. The court then set the matter for further review of defendant's status on October 30, 2014.

We review the trial court's order denying defendant's request for conditional release under the abuse of discretion standard. (*People v. Bartsch* (2008) 167 Cal.App.4th 896, 899–900.) The court did not abuse its discretion. It carefully considered the evidence defendant presented, and its assessment of defendant's progress was thoughtful and solidly grounded on the record before it. Defendant was ably represented by counsel during the proceedings, and there was no ineffective assistance of counsel as defendant suggests in his supplemental brief.[4]

**DISPOSITION**

After a full review of the record, we find no arguable issues and affirm the order denying defendant's section 1026.2 petition for conditional release into the community for supervised outpatient treatment.

---

[4] Counsel did not fail to appeal from the denial of defendant's petition for writ of habeas corpus—addressing the same issue, and heard and denied at the same time as his section 1026.2 petition—since denial of a habeas petition is not appealable. Rather, an inmate must file a new habeas petition in the appellate court. (*In re Clark* (1993) 5 Cal.4th 750, 767.)

4

_____
Banke, J.

We concur:


_____
Humes, P. J.


_____
Dondero, J.